TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

| | | |
|---|---|---|
| OPINION | : | |
| | : | |
| of | : | |
| | : | |
| JOHN K. VAN DE KAMP | : | No. 87-206 |
| Attorney General | : | |
| | : | SEPTEMBER 29, 1987 |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |

------------------------------------------------------------------

THE HONORABLE DAVID ROBERTI, MEMBER, CALIFORNIA STATE SENATE, has requested an opinion on the following questions concerning the determination of a locality's share of the regional housing needs by a council of governments:

1. Must the determination include both the existing and projected housing needs of the locality?

2. Must the availability of suitable housing sites be considered based upon the existing zoning ordinances and land use restrictions of the locality or based upon the potential for increased residential development under alternative zoning ordinances and land use restrictions?

3. Must the income categories of sections 6910-6932 of title 25 of the California Administrative Code be used?

CONCLUSIONS

1. The determination of a locality's share of the regional housing needs by a council of governments must include both the existing and projected housing needs of the locality.

2. The availability of suitable housing sites must be considered based not only upon the existing zoning ordinances and land use restrictions of the locality but also based upon the potential for increased residential development under alternative zoning ordinances and land use restrictions.

3. The income categories of sections 6910-6932 of title 25 of the California Administrative Code must be used.

ANALYSIS

The three questions presented for analysis concern a city's or county's share of regional housing needs as determined by a council of governments and set forth in its general plan. In analyzing these questions we preliminarily note that every city and county operates under a comprehensive and long-term general plan to guide its future physical development. (Gov. Code, § 65300; Buena Vista Garden Apartments Assn. v. City of San Diego Planning Dept. (1985) 175 Cal.App.3d 289, 294.)[1]  "The general plan is atop the hierarchy of local government law regulating land use." (Neighborhood Action Group v. County of Calaveras (1984) 156 Cal.App.3d 1176, 1183.)  Section 65300 states:

"Each planning agency shall prepare and the legislative body of each county and city shall adopt a comprehensive, long-term general plan for the physical development of the county or city, and of any land outside its boundaries which in the planning agency's judgment bears relation to its planning.  Chartered cities shall adopt general plans which contain the mandatory elements specified in Section 65302."

Section 65302 provides:

"The general plan shall consist of a statement of development policies and shall include a diagram or diagrams and text setting forth objectives, principles, standards, and plan proposals.  The plan shall include the following elements:

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) A housing element as provided in Article 10.6 (commencing with Section 65580).

" . . . . . . . . . . . . . . . . . . . . . . . ."

The "housing element as provided in Article 10.6"  (§§ 65580-65589.8) must meet detailed requirements.  Section 65583 provides:

"The housing element shall consist of an identification and analysis of existing and projected housing needs and a statement of goals, policies, quantified objectives, and scheduled programs for the preservation, improvement, and development of housing.  The housing element shall identify adequate sites for

_____

[1]All section references hereafter to the Government Code are by section number only.

2.                                   87-206

housing, including rental housing, factory-built housing, and mobilehomes, and shall make adequate provision for the existing and projected needs of all economic segments of the community. The element shall contain all of the following:

"(a) An assessment of housing needs and an inventory of resources and constraints relevant to the meeting of these needs. The assessment and inventory shall include the following:

"(1) Analysis of population and employment trends and documentation of projections and a quantification of the locality's existing and projected housing needs for all income levels. These existing and projected needs shall include the locality's share of the regional housing need in accordance with Section 65584.

" . . . . . . . . . . . . . . . . . . . . . . . ."

Section 65584 states:

"(a) For purposes of subdivision (a) of Section 65583, a locality's share of the regional housing needs includes that share of the housing need of persons at all income levels within the area significantly affected by a jurisdiction's general plan. The distribution of regional housing needs shall, based upon available data, take into consideration market demand for housing, employment opportunities, the availability of suitable sites and public facilities, commuting patterns, type and tenure of housing need, and the housing needs of farmworkers. The distribution shall seek to avoid further impaction of localities with relatively high proportions of lower income households. Based upon data provided by the Department of Finance, in consultation with each council of government, the Department of Housing and Community Development shall determine the regional share of the statewide housing need at least two years prior to the second revision, and all subsequent revisions as required pursuant to Section 65588. Based upon data provided by the Department of Housing and Community Development relative to the statewide need for housing, each council of governments shall determine the existing and projected housing need for its region. Within 30 days following notification of this determination, the Department of Housing and Community Development shall ensure that this determination is consistent with the statewide housing need and may revise the determination of the council of governments if necessary to obtain this consistency. Each locality's share shall be determined by the appropriate council of governments consistent with the criteria above with the advice of the department subject to the procedure established pursuant to subdivision (c) at least one year prior to the second revision, and at five-year intervals following the second revision pursuant to Section 65588.

"(b) For areas with no council of governments, the Department of Housing and Community Development shall determine housing market areas and define the

regional housing need for localities within these areas. Where the department determines that a local government possesses the capability and resources and has agreed to accept the responsibility, with respect to its jurisdiction, for the identification and determination of housing market areas and regional housing needs, the department shall delegate this responsibility to the local governments within these areas.

" . . . . . . . . . . . . . . . . . . . . . . . . "

Section 65584 gives the Department of Housing and Community Development ("Department") various responsibilities including the duty to define the regional housing need for localities[2] in areas not covered by a council of governments, unless it has delegated such authority to a local government. For cities and counties located in areas served by a council of governments, the council performs this function.

Section 65584 requires the Department or a council to act when a housing element of a city or county is revised "pursuant to Section 65588." The latter statute designates various dates for housing element revisions, including for areas covered by specified councils of governments:

"(1) Local governments within the regional jurisdiction of the Southern California Association of Governments: July 1, 1984, for the first revision and July 1, 1989, for the second revision.

"(2) Local governments within the regional jurisdiction of the Association of Bay Area Governments: January 1, 1985, for the first revision, and July 1, 1990, for the second revision.

"(3) Local governments within the regional jurisdiction of the San Diego Association of Governments, the Council of Fresno County Governments, the Kern County Council of Governments, the Sacramento Council of Governments, and the Association of Monterey Bay Area Governments: July 1, 1985, for the first revision, and July 1, 1991, for the second revision."

Thereafter a housing element revision is required "not less than every five years." (§ 65588, subd. (b).)

The focus of the three inquiries is directed at both sections 65583 and 65584. Several well-recognized principles of statutory construction aid our analysis of these legislative enactments. In construing statutory language, we are to "ascertain the intent of the Legislature so as to effectuate

---

[2]Throughout the statutory scheme "locality" is used interchangeably with "community," "local government," and "jurisdiction" and means either the city or the county (or San Francisco which is a city and county). (§ 65582, subd. (a).)

the purpose of the law." (<u>Select Base Materials</u> v. <u>Board of Equal.</u> (1959) 51 Cal.2d 640, 645; accord <u>People</u> v. <u>Davis</u> (1981) 29 Cal.3d 814, 828.) "In determining such intent, the court 'turns first to the words themselves for the answer' [citations]." (<u>People</u> v. <u>Craft</u> (1986) 41 Cal.3d 554, 560.) The words are to be given "their ordinary and generally accepted meaning." (<u>People</u> v. <u>Castro</u> (1985) 38 Cal.3d 301, 310.) Moreover, "legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit." (<u>Wells</u> v. <u>Marina City Properties, Inc.</u> (1981) 29 Cal.3d 781, 788.) "Wherever reasonable, interpretations which produce internal harmony, avoid redundancy and accord significance to every word and phrase are preferred." (<u>Pacific Legal Foundation</u> v. <u>Unemployment Ins. Appeals Bd.</u> (1981) 29 Cal.3d 101, 114.) "Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided." (<u>California Mfrs. Assn.</u> v. <u>Public Utilities Com.</u> (1979) 24 Cal.3d 836, 844.)

1.  <u>Existing and Projected Housing Needs</u>

The first question posed is whether the council's determination of a locality's share is to include both the existing and projected[3] housing needs of the locality. We conclude that it does.

Section 65584 directs a council to "determine the existing and projected housing need for its region." The purpose of such determination is to calculate and apportion shares of this need to all cities and counties in the region. "Each locality's share shall be determined by the appropriate council of governments." (§65584, subd. (a).)

Two components thus comprise the regional housing need: the existing housing need and the projected housing need. When shares of the regional housing need are apportioned to the communities in the area, each share contains both components. No provision of the statute remotely suggests that one of the necessary components is to be omitted when apportioning shares.

Such construction of section 65584 is supported by the language of section 65583. As previously quoted, the latter statute requires that the housing element of a city or county contain "a quantification of the locality's existing and projected housing needs for all income levels." It then provides: "These existing and projected needs shall include the locality's share of the regional housing need in accordance with Section 65584." Hence the reference in section 65583 to "existing and projected housing needs" in conjunction with "the locality's share of the regional housing need" clearly indicates that the latter incorporates both components.

One of the purposes of the legislation governing housing elements is "[t]o ensure that each local government cooperates with other local governments in order to address regional housing needs." (§ 65581, subd. (d).) Regional housing needs include both existing and projected needs. (§ 65584, subd. (a).) Both components are "addressed" by apportioning shares thereof to each

_____

[3]A locality's "projected" housing needs would be those for the next five-year period. (See § 65583, subds. (b), (c).)

community in the region.  By so construing section 65584, we give each of its provisions meaning and carry out the apparent intent of the Legislature.

In answer to the first question, therefore, we conclude that the determination of a locality's share of the regional housing needs by a council of governments must include both the existing and projected housing needs of the locality.

### 2. Current Zoning Ordinances

The second question concerns whether in making its determination of a locality's share of the regional housing needs, a council of governments is to consider the availability of suitable housing sites based upon the existing zoning ordinances and land use restrictions of the locality or upon alternative zoning ordinances and land use restrictions that would allow the potential for increased residential development.  We conclude both existing and alternative zoning ordinances and land use restrictions must be considered.

The council of governments is directed to determine a locality's share of the regional housing needs based upon the following criteria:

"The market demand for housing, employment opportunities, the availability of suitable sites and public facilities, commuting patterns, type and tenure of housing need, and the housing needs of farmworkers [and the avoidance of] further impaction of localities with relatively high proportions of lower income households." (§ 65584, subd. (a).)

We find no indication in section 65584 that current zoning ordinances and land use restrictions are to limit the factor of "the availability of suitable sites."  A housing site would be unsuitable based upon its physical characteristics, not because of some governmental control of an artificial and external nature.  The planning process of sections 65583 and 65584 contemplates an identification of adequate sites that could be made available through different policies and development standards.  Existing zoning policies would be only one aspect of the "available data" upon which the factor of "the availability of suitable sites" is to be considered under section 65584. To argue that this part of the general plan is required to conform to existing zoning practices would be anomalous and circuitous, since section 65860 requires the zoning ordinances of a locality to be consistent with its general plan.  Subdivision (d) of section 65584 emphasizes this fact by expressly providing that a local government's share of the regional housing need is not subject to reduction, except in one narrow circumstance, by:

". . . any ordinance, policy, or standard of a city, county, or city and county which directly limits, by number, the building permits which may be issued for residential construction, or which limits for a set period of time the number of buildable lots which may be developed for residential purposes."

Our construction of section 65584 is consistent with the goals of the statutory scheme as a whole (§§ 65580-65589.8) and the particular requirements specified for housing elements (§ 65583). The legislation has as its primary purpose "to expand housing opportunities and accommodate the housing needs of Californians of all economic levels." (§ 65580, subd. (b).) Cities and counties are directed to "recognize their responsibilities in contributing to the attainment of the state housing goal." (§ 65580, subd. (a).) Each local government is "to cooperate with other local governments and the state in addressing regional housing needs." (§ 65580, subd. (e).) Allowing a city or county to prevent being allocated a share of the regional housing needs through restricted zoning ordinances would be contrary to the manifest intent of the Legislature.[4]

The housing element of a local government must specifically include:

"An inventory of land suitable for residential development, including vacant sites and sites having potential for redevelopment, and an analysis of the relationship of zoning and public facilities and services to these sites." (§ 65583, subd. (a)(3).)

It is the "relationship" of current zoning ordinances that must be considered with respect to suitable housing sites. No hint of <u>limitation</u> may be found in the use of the term "relationship." Section 65583 also requires that a housing element include a five-year program that will:

"Identify adequate sites which will be made available through appropriate zoning and development standards and with public services and facilities needed to facilitate and encourage the development of a variety of types of housing for all income levels
 . . . ." (§ 65583, subd. (c)(1).)

Such language unmistakably contemplates that zoning ordinances and land use restrictions may require modification during the five-year period to accommodate a locality's projected housing needs. Consistent with this interpretation is the requirement that the five-year program:

"Address and, where appropriate and legally possible, remove governmental constraints to the maintenance, improvement, and development of housing." (§ 65583, subd. (c)(3).)

These "governmental constraints" must be analyzed in detail in the housing element; the element must contain:

"Analysis of potential and actual governmental constraints upon the maintenance, improvement, or development of housing for all income levels,

---

[4]The only authorized exception is a locality's "moratorium on residential construction for a set period of time in order to preserve and protect the public health and safety." (§ 65584, subd. (d)(2).)

including land use controls, building codes and their enforcement, site improvements, fees and other exactions required of developers, and local processing and permit procedures." (§ 65583, subd. (a)(4).)

In sum, a local government must provide in its housing element for the existing and projected housing needs of all economic segments of the community. (§ 65583.) In doing so, it is required to identify suitable housing sites. (§ 65583, subd. (a)(3).) The city or county must identify those sites "which will be made available through appropriate zoning and development standards" during the ensuing five-year period. (§65583, subd. (c)(1).) It must "undertake to implement the policies and achieve the goals and objectives of the housing element through the administration of land use and development controls." (§ 65583, subd. (c).) The required consideration and evaluation of zoning changes necessary to meet the identified needs of the community would be precluded by allowing existing zoning limitations to define what housing sites are "suitable."

A council of governments thus would not be able to perform the task mandated for it without consideration of land uses that are possible despite existing zoning restrictions. The "suitable sites" factor to be considered by a council pursuant to section 65584 must be read in conjunction with the phrase "land suitable for residential development" of section 65583 that requires consideration of zoning limitations but is not limited to lands presently zoned for such development.

In answer to the second question, therefore, we conclude that a council of governments must consider the availability of suitable housing sites based not only upon the existing zoning ordinances and land use restrictions of the locality but also based upon the potential for increased residential development under alternative zoning ordinances and land use restrictions when determining a locality's share of the regional housing needs.

3. Calculation of Income Levels

The third question presented is whether a council of governments is required to follow the regulations (Cal. Admin. Code, tit. 25, §§ 6910-6932) of the Department defining income categories when determining a locality's share of the regional housing needs. We conclude that it must.

Regulation 6926 states in part:

"'Very low income households' means persons and families whose gross incomes do not exceed the qualifying limits for very low income families established and amended from time to time pursuant to Section 8 of the United States Housing Act of 1937. The qualifying limits are set forth in Section 6932. These limits are equivalent to 50 percent of the area median income, adjusted for family size by the United States Department of Housing and Urban Development." (Cal. Admin. Code, tit. 25, § 6926, subd.(a).)

Regulation 6928 provides in part:

> "'Lower income households' means persons and families whose gross incomes do not exceed the qualifying limits for lower income families as established and amended from time to time pursuant to Section 8 of the United States Housing Act of 1937. The qualifying limits are set forth in Section 6932. These limits are equivalent to 80 percent of the area median income, adjusted for family size and other adjustment factors by the United States Department of Housing and Urban Development." (Cal. Admin. Code, tit. 25, § 6928; subd. (a).)

Regulation 6930 states in part:

> "'Moderate income households' means persons and families who are not 'lower income households' and whose gross incomes do not exceed 120 percent of the area median income adjusted for family size in accordance with adjustment factors adopted by the United States Department of Housing and Urban Development in establishing income limits for lower income families. For purposes of this subchapter, the income limits are set forth in Section 6932." (Cal. Admin. Code, tit. 25, § 6930, subd. (a).)

These regulations are authorized by and are consistent with Health and Safety Code sections 50079.5 (lower income households), 50093 (moderate income households), and 50105 (very low income households).

A council of governments must determine a locality's share of the regional housing needs "of persons at all income levels within the area." (§ 65584, subd.(a).) This determination is to be "[b]ased upon data provided by the Department." (Ibid.) It is the Department that assesses the state housing needs upon which the regional housing needs are calculated. The Department is also required to revise any determination of regional housing needs made by a council that is inconsistent with the state housing needs. (Ibid.) The Department follows state law (Health & Saf. Code, §§ 50079.5, 50093, 50105; Cal. Admin. Code, tit. 25, §§ 6910-6932) in categorizing income levels for its calculations and the data provided to the councils. For a council to "base" its determinations upon the Department's data, we believe that it is directed to use the income categories selected by the Department. No other definitions of moderate income, lower income, or very low income may be found in state law governing this issue.

We note also that the Legislature has specifically referred to "persons and families of low or moderate income, as defined in Section 50093 of the Health and Safety Code" when mandating the review and revision of housing elements. (§ 65588, subd.(d).)

Requiring a council of governments to follow the income classifications established by the Legislature and Department provides consistency between sections 65584 and 65588. Such interpretation of the terms of section 65584 facilitates the administration of the state housing laws. Allowing each council of governments, on the other hand, to create its own income classifications

would be impractical and would defeat the purpose of meeting the state housing needs in a consistent and effective manner. Uniformity of classification allows the local governments "to cooperate with other local governments and the state in addressing regional housing needs." (§ 65580, subd. (e).)

In answer to the third question, therefore, we conclude that the income categories of sections 6910-6932 of title 25 of the California Administrative Code must be used by a council of governments when determining a locality's share of the regional housing needs.

\* \* \* \* \*